UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ALONZO SHAFFER,                     )
                                    )
                    Plaintiff,      )
                                    )
v.                                  )    Case No. 1:16-cv-0883
                                    )
BRENT D. REYNHOUT and               )    Honorable Robert J. Jonker
BRYAN L. JOLLIFFE,                  )
                                    )
                    Defendants.     )
_____)

## REPORT AND RECOMMENDATION

This is a civil rights action brought *pro se* by a former inmate at the Kalamazoo County Jail under 42 U.S.C. § 1983. Plaintiff claims that defendants violated his Eighth Amendment rights. He alleges that Kalamazoo County Deputy Sheriffs Brent D. Reyhnout and Bryan L. Jolliffe used excessive force against him on August 13, 2013, after he had been assaulted by a fellow inmate, William Butterworth. Plaintiff also alleges that the deputies were deliberately indifferent to his serious medical needs resulting from injuries sustained during the incident. (Amended Complaint, ECF No. 24).[1]

_____

[1] Plaintiff's invocation of the Eighth Amendment assumes that he was serving a custodial sentence at the time of the August 13, 2013, incident. Plaintiff's status remains unclear, however, as neither party has provided sufficient evidence to definitively resolve that issue. For the reasons stated later herein, I will apply the Fourteenth Amendment standards.

The matter is now before the Court on defendants' motion for summary judgment. (ECF No. 96). Defendants argue that they are entitled to qualified immunity as to each claim. (Brief, ECF No. 97). Plaintiff has responded in various filings. (ECF No. 104, 106, 113, 114, 132, and 147). For the reasons stated herein, I recommend that the Court grant the motion for summary judgment.

Also before the Court are plaintiff's third motion to amend his complaint to add the State of Michigan as a defendant (ECF No. 113); his motion to hold the State of Michigan and Kalamazoo County liable for failure to train (ECF No. 138); his motion for summary judgment (ECF No. 143); his motion for judgment on the pleadings (ECF No. 159); his fourth motion to amend his complaint in which he seeks to add some forty additional defendants, including the undersigned judicial officer (ECF No. 166). Defendants have responded to these motions. (See ECF No. 115, 144, 160, and 167). For the reasons set forth herein, I recommend that the Court deny each of these motions.[2]

_____

[2] Plaintiff has filed a number of other pending motions, including those relating to discovery (ECF No. 104, 108, 109, 110, 157), seeking monetary relief (ECF No. 106); seeking sanctions against defendants and their attorneys (ECF No. 113, 114, 126, 128, 138, 147, 157), seeking default judgment (ECF No. 119, 126, 138, 142, and 161), seeking to disqualify defendants' counsel (ECF No. 141), seeking a ruling regarding the definition of perjury (ECF No. 129), seeking a definition of conspiracy and guidance on protecting oneself from law enforcement misconduct (ECF No. 154), asking the Court to set a trial date (ECF No. 147, 168, 170, 172, and 174), a motion to continue proceeding *in forma pauperis* (ECF No. 173), and a motion to strike defendants' defense, as frivolous (ECF No. 175). I am issuing a separate Omnibus Order denying or dismissing each of these motions.

## Procedural History

This case has involved protracted litigation.  More than forty motions have been filed, including four motions by plaintiff to amend his complaint.  Plaintiff also attempted, unsuccessfully, to take an interlocutory appeal to the Sixth Circuit.  (*See* Nov. 16, 2017, Order, No. 17-2231, found in this docket at ECF No. 90).  Plaintiff recently attempted to file a notice of appeal to the United States Supreme Court.  (*See* Aug. 29, 2018, Order Rejecting Pleading, ECF No. 176).

The case began on July 12, 2016, when plaintiff filed a complaint naming only the Kalamazoo County Sheriff's Department.  (ECF No. 1).  Plaintiff claimed that his civil rights had been violated by the Sheriff's Department due to the actions of two sheriff deputies who allegedly used excessive force in breaking up an altercation between plaintiff and another inmate at the Kalamazoo County Jail.  (ECF No. 1, PageID.2).  The Court granted his motion to proceed *in forma pauperis*.  (ECF No. 3).

On August 16, 2016, the Sheriff's Department filed a motion to dismiss for failure to state a claim upon which relief can be granted.  (ECF No. 6).  Plaintiff responded on September 15, 2016, attaching copies of investigative reports regarding the incident.  (ECF No. 8, 8-1).  He filed an "Addendum/Supplement to Complaint" on September 28, 2016.  (ECF No. 12).  He alleged, again, that Deputy Jolliffe violated his civil rights under the Eighth Amendment by using excessive force in breaking up an altercation between plaintiff and the other inmate.  (ECF No. 12, PageID.43-44).

On September 29, 2016, plaintiff filed a motion to amend his complaint.  (ECF No. 14).  The proposed amended complaint named Kalamazoo County and the county

administrator as defendants instead of the Kalamazoo Sheriff's Department.  (ECF No. 14-1, PageID.49).

On October 11, 2016, I conducted a hearing on the Sheriff Department's motion to dismiss and plaintiff's motion to amend the complaint.  (Minutes, ECF No. 17).  In a report and recommendation filed the next day, I recommended that the Court grant the Sheriff Department's motion to dismiss, and that the Court deny plaintiff's motion to amend the complaint as futile.  (ECF No. 18).

On November 4, 2016, the Court adopted the recommendation to dismiss the claim against the Sheriff's Department, but allowed plaintiff to further amend his complaint to give him an opportunity to provide more specificity to his claim against the county.  (Order, ECF No. 23, PageID.95).  With respect to the latter, the Court noted:

> Plaintiff can and should recite his claims in a more coherent, amended complaint. . . .  To facilitate this, the Court GRANTS Plaintiff leave to amend his complaint to state a policy and practice claim against Kalamazoo County, an excessive force and race discrimination claim against Officer Jolliffe, and any other claim Plaintiff believes he has against any defendants.

(*Id.* at 4, PageID.96).

Plaintiff filed his amended complaint on November 28, 2016.  (ECF No. 24). The amended complaint includes three counts: in Count I, plaintiff claims that Deputy Bryan Jolliffe violated his Eighth Amendment rights by using excessive force, including the use of a "choke hold," and that the deputy was deliberately indifferent to plaintiff's medical needs; in Count II, plaintiff raises excessive force and deliberate indifference claims against Deputy Brent Reynhout for his participation in the same

incident; and in Count III, plaintiff contends that Kalamazoo County is vicariously liable for the acts of its employees (Deputies Jolliffe and Reynhout), and he asserts that the County is directly liable due to "its policies, practices, and customs, which [led] to this complaint of violation." (ECF No. 24, PageID.98-99).

On December 12, 2016, defendant Kalamazoo County moved to dismiss Count III of the amended complaint, pursuant to Rule 12(b)(6). (ECF No. 26). Plaintiff filed a timely response on January 4, 2017 (ECF No. 28), and Kalamazoo County filed a reply on January 9, 2017. (ECF No. 31). On January 17, 2017, defendants Jolliffe and Reynhout filed a motion to dismiss Counts I and II of the amended complaint, pursuant to Rule 12(b)(6). (ECF No. 33). Plaintiff timely responded on January 31, 2017 (ECF No. 34), and defendants Jolliffe and Reynhout replied on February 3, 2017. (ECF No. 35). On April 21, 2017, I conducted a hearing on both motions to dismiss. (Minutes, ECF No. 56).

On September 12, 2017, I recommended that the Court grant Kalamazoo County's motion to dismiss, and to deny the individual defendants' motion. (ECF No. 70). In that recommendation, I advised plaintiff of his burden of demonstrating that Deputies Reynhout and Jolliffe are not entitled to qualified immunity. (*See* ECF No. 70, PageID.282, n.2). The Court adopted the report and recommendation on September 26, 2017, dismissing Kalamazoo County from the case. (ECF No. 74).

Defendants Reynhout and Joliffe filed their pending motion for summary judgment on December 7, 2017. (ECF No. 96). Plaintiff filed the first of six responses to the summary judgment motion on January 4, 2108 (ECF No. 104); his other

arguments against defendants' motion for summary judgment are included in various motions and objections (*see* ECF No. 106, 113, 114, 132, and 147).

Plaintiff also moved to compel discovery in the form of a copy of a video of the August 13, 2013, incident, as well as the production of all witnesses to the incident. (ECF No. 94). Defendants responded, noting, among other things, that plaintiff had failed to serve any discovery requests and that the discovery deadline had passed as of June 22, 2017. (ECF No. 99). In a December 15, 2017, hearing on plaintiff's motion to compel, I explained to plaintiff the requirement of serving discovery requests, and I extended, *sua sponte*, plaintiff's discovery deadline to January 16, 2018, as well as his deadline for responding to defendants' summary judgment motion to March 19, 2018. (Minutes, ECF No. 102; Order, ECF No. 103).

Plaintiff continued to seek discovery through the Court (ECF No. 104, 108, 114, and 119), which the Court indulgently treated as motions to compel discovery. (*See* Order, ECF No. 125). During an April 11, 2018, hearing on these motions, counsel for defendants advised the Court that Kalamazoo County could not produce a video of the August 13, 2013, incident, as it did not exist. Counsel for defendants also stated during this hearing that he had already provided plaintiff with requested contact information concerning individuals who may have witnessed the incident. Plaintiff disputed both assertions. Accordingly, I scheduled an evidentiary hearing and ordered defendants to produce a witness with personal knowledge of whether a video recording of the incident ever existed. (Order, ECF No. 125, PageID.553). I also ordered defendants to produce evidence of whether they provided plaintiff with

contact information concerning the potential witnesses to the incident.  (*Id.*).

The evidentiary hearing was held on May 2, 2018 (Minutes, ECF No. 133), at which Captain Amy Price of the Kalamazoo County Sheriff's Department testified to the effect that no video of the August 13, 2013, incident ever existed.  (Order, ECF No. 134, PageID.597).  She explained, in essence, that the video cameras in the area of the incident were not connected to any video recording equipment.  I found her testimony to be credible.

Prior to the May 2, 2018, hearing, defense counsel sent plaintiff the names and addresses of persons who may have witnessed the August 13, 2013, incident.  (*See* ECF No. 130, PageID.589).  During the hearing, defense counsel acknowledged that he had mistakenly failed to provide that information previously.  He advised the Court that defendants did not object to an extension of the discovery deadline to allow plaintiff an opportunity to depose these witnesses.  (*See* May 2, 2018, Order, ECF No. 134, PageID.597).  Accordingly, I reopened discovery to allow plaintiff to take up to six depositions, each not to exceed two hours, and I permitted plaintiff to file a supplemental response to the motion for summary judgment within thirty days of the date of the last deposition.  (*Id.*, PageID.597-98).  Plaintiff was directed to notify the Court if he elected not to take further discovery.  (*Id.*, PageID.598).

In a May 8, 2018, filing styled simply as a "motion," plaintiff objected to the May 2 order, contending, among other things, that he had been prejudiced by defense counsel's untimely disclosure of witness contact information, and noting that he "may need to cancel part of the new allowed discovery granted by judge GREEN for lack of

money[.]"  (ECF No. 135, PageID.600).  On May 10, 2018, the Court overruled the objection and affirmed the May 2 order.  (Order, ECF No. 136).

Plaintiff has apparently elected not to take any of the six depositions allowed by the May 2 order.  He has filed nothing of evidentiary value concerning his claims of excessive force and deliberate indifference.  The only putative evidence plaintiff has submitted are a copy of the investigative report concerning the August 13, 2013 (ECF No. 8-1), and physical therapy notes from January 2014 and October 2016 ("Supplement Evidence," ECF No. 60, PageID.225-31).  None of these documents have been authenticated.[3]

### Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016).  The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

---

[3] The investigative report hurts, rather than helps, plaintiff's cause.  It includes Deputy Jolliffe's statement concerning plaintiff's apology for his lack of compliance with the deputy's order to release the other inmate during the altercation, and the deputy's statement that plaintiff showed no signs of injury following the altercation. (ECF No. 8-1, PageID.33).  It also includes Deputy Reynhout's statement to the effect that plaintiff had resisted Deputy Jolliffe's efforts to restrain him.  (*Id.*, PageID.35). These statements are hearsay, and defendants have elected not to provide the Court with an affidavit or declaration with their version of the August 13, 2013, incident. Accordingly, the contents of the investigative report are not being considered for the purposes of this Report and Recommendation.

matter of law.' " *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim.  *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).  Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.  *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012); *see Scadden v. Warner*, 677 F. App'x 996, 1001, 2017 WL 384874, at *4 (6th Cir. Jan. 27, 2017).  The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012).  "A mere scintilla of evidence is insufficient; 'there must be evidence on

which a jury could reasonably find for the [non-movant].' " *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation and quotation omitted). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and " 'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.' " *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## Proposed Findings of Fact

The following facts are either undisputed or based on plaintiff's deposition testimony, which, for purposes of this motion is taken as true.[4]

Plaintiff was lodged at the Kalamazoo County Jail following his arrest for shoplifting at Walmart.[5]  He was initially placed in a receiving cell.  Plaintiff advised the jail staff that he had epilepsy, strabismus, and asthma.  He was then transferred to a one-man cell for a number of hours before being placed in the "rehab cell."  Plaintiff described the rehab cell as "a suicide watch type cell" – one that is under constant watch.  Plaintiff believes that he was placed in the rehab cell so that the jail staff could "monitor" him, and to "make sure everything was all right."  (Pltf's Dep. at 73-75, 88-91, ECF No. 97-1, PageID.413-15)  "[T]here was a lady in the control tower booth, and probably a gentleman, also, that was observing [the rehab] cell that [plaintiff] was in."  (*Id.* at 94, PageID.416).

The only other person in the rehab cell was a man named William Butterworth.

---

[4] Defendants did not submit affidavits or declarations in support of their summary judgment motion.  Accordingly, the Court is limited to plaintiff's account of the August 13, 2013, incident.  It should be noted that defendants provided the court with only selective pages of the transcript of plaintiff's deposition.  Plaintiff had an opportunity to respond to the motion and to provide any additional deposition testimony or other evidence, and he chose not to do so.

[5] It appears from a document attached to defendants' motion for summary judgment that the date of alleged offense was August 9, 2013.  (*See* 8th Dist. Ct., Kalamazoo County, Register of Action, ECF No. 97-2, PageID.424).  It is not clear from this document whether plaintiff was arrested on that date or some later date.  As noted below, this document has not been authenticated.  It is undisputed, however, that plaintiff was being held in custody on August 13, 2013, the date of the alleged incident.  Plaintiff testified that he believed he was arrested on the "8th or the 9th," but he was uncertain of the month.  (*See* Pltf's Dep. at 88-89, ECF No. 97-1, PageID.414-15).

Plaintiff described Mr. Butterworth as a man in his mid to late forties.  Mr. Butterworth appeared to be going through some type of withdrawal or mental issue, and he was looking at plaintiff in a "funny" way, making plaintiff feel uncomfortable. Plaintiff asked a sheriff deputy if it was safe for him to be in the same cell as Mr. Butterworth.  The deputy responded that he had not placed plaintiff in the rehab cell, and that plaintiff needed to address his concerns with the staff that had placed him there.  (Pltf's Dep. at 92-94, PageID.415-16).

At one point, jail staff arrived with food trays for plaintiff and Mr. Butterworth. Plaintiff took his tray, but Mr. Butterworth appeared not to want his.  Plaintiff told the staff that there was something wrong with Mr. Butterworth, and plaintiff questioned whether he was safe.  The staff ignored plaintiff's query.  After plaintiff began eating, Mr. Butterworth attacked him, "punching," "scratching," "slapping" and "trying to bite" plaintiff.  Mr. Butterworth drove plaintiff against the wall of the cell.  Plaintiff yelled for help.  The attack was unprovoked.  (Pltf's Dep. at 95-101, 118, PageID.416-18, 421).

Within five minutes, four deputies arrived, including defendants Bryan Joliffe and Brent Reynhout.  The altercation was continuing at the time the deputies entered the cell.  Deputy Jolliffe ordered plaintiff to the floor,[6] while Deputy Reynhout told

---

[6] In his deposition, plaintiff described the deputy who ordered him to the floor variously as a "Chinese or Japanese Caucasian American" or a "white" guy with "slanted or tight eyes like a Japanese or Chinese," but when asked, plaintiff identified the "Chinese looking guy" as Bryan Jolliffe, and the "non Chinese looking guy" as Brent Reynhout.  (Pltf's Dep. at 109-10, 120, ECF No. 97-1, PageID.419, 421).  The defendants' names are used herein, rather than plaintiff's ethnic descriptions.

plaintiff "don't move."  Plaintiff was confused as to what to do, so he put his hands up and "froze" in position.  Deputy Jolliffe then grabbed plaintiff by the neck and took him to the floor.  The deputy had his arm under plaintiff's neck and was pulling "really far back" choking plaintiff.  Plaintiff was screaming:  "You're hurting me, I can't breathe."   Nevertheless, Deputy Jolliffe continued the choke hold and told plaintiff to "stop moving."  Deputy Reynhout came in the cell, got on top of plaintiff, and bent plaintiff's legs up – plaintiff's abdomen was on the floor.  Plaintiff described it as being "pretzeled" and "like a wrestler move with a choke hold."  The pain was "excruciating," and plaintiff "begged for help."  The deputies handcuffed plaintiff and asked him to get up on his own, but plaintiff was unable to do that.  He "was in shock." (Pltf's Dep. at 102-04, 109-10, 113-15, PageID.418-20).

Deputy Jolliffe asked plaintiff if he wanted another tray of food, to which plaintiff responded: "sure."  Plaintiff was provided another food tray.  After he "ate a few bites," and "a little bit of time passed," plaintiff was sent to a different, six-man, cell.  Plaintiff was in shock initially and did not feel any pain.  He later felt soreness in his back and neck.  Plaintiff "mentioned this," but he thought he could "self-medicate it and treat [him]self."  The pain became worse after he was released from jail approximately five hours after being transferred to the six-man cell.  Plaintiff treated the pain with "old pain killers" he had, including Tylenol 3 and Motrin. Plaintiff has also been drinking alcohol due to daily pain and limitations he experiences in his daily life.  He received treatment for pain, depression and anxiety at some point after release from jail, but his doctors have more recently declined to

prescribe him pain medicine due to a controlled substance contract.  (Pltf's Dep. at 115, 118, 121-24, PageID.420-22).

Immediately after the assault, plaintiff advised Deputy Jolliffe that he wanted to make an incident report.  The deputy returned shortly thereafter and began drafting the incident report.  The deputy conducted an investigation, which included interviews of plaintiff and other witnesses to the incident.  Plaintiff has read the report and the records of witness interviews.  When asked if he took exception to anything in the report, plaintiff testified that he disagreed with a statement indicating that he "was involved in an altercation with William Butterworth," noting that the altercation was forced upon him.  Plaintiff acknowledged, however, that the report concluded that Mr. Butterworth assaulted plaintiff without provocation. (Pltf's Dep. at 115-18, PageID.420-21).

### Discussion

## I.    Defendants Jolliffe and Reynhout's Motion for Summary Judgment

Defendants Reynhout and Jolliffe assert qualified immunity against both the excessive force and the deliberate indifference claims.  (ECF No. 97, PageID.399-406). "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.' " *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)); *see Hermansen v. Thompson*, 678 F. App'x 321, 325 (6th Cir. 2017).

"A government official sued under section 1983 is entitled to qualified

-14-

immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015); *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014). The first prong of qualified immunity analysis is whether the plaintiff has alleged facts showing that each defendant's conduct violated a constitutional or statutory right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong is whether the right was "clearly established" at the time of the defendant's alleged misconduct. *Id.* Trial courts are permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. At the summary judgment stage, "the plaintiff must, at a minimum, offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which a jury could reasonably find for the plaintiff.' " *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016); *see Gardner v. Evans*, 811 F.3d 843, 846 (6th Cir. 2016).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017). Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see also Kisela v.*

*Hughes*, 138 S. Ct. 1148, 1152 (2018) (reiterating this principle).

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' " *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) ("Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity."). The burden applies to each claim. *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

### Preliminary Matter

As an initial matter, the Court needs to determine which standards to apply to plaintiff's excessive-force claim: the Eighth Amendment's Cruel and Unusual Punishment Clause or the Fourteenth Amendment's Due Process Clause. This distinction matters. As the Supreme Court noted: "The language of the two Clauses differs, and the nature of the claims often differs. And, most importantly, pretrial detainees (unlike convicted prisoners) cannot be punished at all, much less 'maliciously and sadistically.' " *Kingsley v. Hendrickson*, 576 U.S. __, 135 S. Ct. 2466, 2475 (2015) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72, n.40 (1977)).

Neither party has definitively established plaintiff's status while incarcerated at the Kalamazoo County Jail on August 13, 2013. In his deposition, plaintiff testified that he did not know his status, but he also stated that he had appeared in court by video and had pled not guilty to the shoplifting charge for which he had been arrested. (Pltf's Dep. at 75, ECF No. 97-1, PageID.413). Defendants have produced a document that appears to be a record from the 8th District Court in Kalamazoo County. (8th

Dist. Ct., Kalamazoo County, Register of Action, Exhibit B, ECF No. 97-2, PageID.424-30). This document indicates that, on August 12, 2013, plaintiff was arraigned on a shoplifting charge (indicating an offense date of August 9, 2013), and that he pled guilty to that charge on August 27, 2013. (*Id.*, PageID.424, 427). That document also indicates that plaintiff received a non-custodial sentence. (*Id.*, PageID.427).[7]

Defendants offer nothing to authenticate this document, much less do they offer any explanation of it. The only reference in defendants' brief to the 8th District Court's Register of Action is a bald citation in support of defendants' assertion that plaintiff pled guilty to the shoplifting charge on some unspecified date. (Defs' Br. at 2-3, ECF No. 97, PageID.395-96). But, in their argument, defendants' cite to the Fourteenth Amendment. (*See id.* at 7, PageID.400).

Notwithstanding the lack of clarity regarding plaintiff's status at the Kalamazoo County Jail on August 13, 2013, I will address plaintiff's excessive force claim under the standards for the Fourteenth Amendment for two reasons. First, the dates in the 8th District Court's Register of Action appear to correspond, at least approximately, to plaintiff's account in his deposition (although he was uncertain as to dates other than the August 13, 2013, date of the alleged incident). Second, the standards under the Fourteenth Amendment are somewhat more advantageous to plaintiff; using those standards gives plaintiff the benefit of the doubt. *Cf. Hopper v.*

---

[7] On March 17, 2014, plaintiff apparently received a five-day jail sentence for violating the probationary sentence. (*See* 8th Dist. Ct., Kalamazoo County, Register of Action, Exhibit B, ECF No. 97-2, PageID.429-30).

*Plummer*, 887 F.3d 744, 751 (6th Cir. 2018) ("When an individual does not clearly fall within either [the Fourth or Eighth Amendment] category, the Fourteenth Amendment's Due Process Clause prohibits a government official's excessive use of force." (citing *Phelps v. Coy*, 286 F.3d 295, 299-300 (6th Cir. 2002)).

### A.    Excessive Force

In his amended complaint, plaintiff claims that Deputies Joliffe and Reynhout used excessive force against him following an assault by a fellow inmate.  Plaintiff alleges that Deputy Jolliffe used excessive force when he placed plaintiff in a "choke hold," and that he used such force to take plaintiff to the ground that "[p]laintiff felt as if his neck [was] going to break" and he was unable to breathe.  (Amend. Compl. ¶¶ 17-19, ECF No. 24, PageID.98).  Plaintiff asserts that he was "standing still" at the time Deputy Jolliffe used the choke hold and wrestled him to the ground.  (*Id*. at ¶ 26, PageID.98).  Plaintiff further alleges that, when he told Deputy Jolliffe that he could not breathe, the deputy responded by "yelling, 'I don't give a f__k.'" (*Id*. at ¶ 20, PageID.98).[8]

Plaintiff claims that Deputy Reynhout used excessive force by placing plaintiff in "further restraint while being restrained and compliant with [d]efendant Jolliffe's commands, and amidst cries of pain from [p]laintiff[.]" (*Id*. at ¶ 31, PageID.99). Plaintiff also asserts that both deputies continued to use excessive force after he was on the ground and under restraint by kneeling into his spine.  (*Id*. at ¶ 21, PageID.98).

---

[8] Plaintiff's complaint is not verified under the penalty of perjury.  It cannot be considered as an affidavit in opposition to defendants' summary judgment motion. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

In his deposition testimony, plaintiff acknowledged that the altercation between himself and Mr. Butterworth was ongoing at the time deputies Joliffe and Reynhout arrived at the cell.  (Pltf's Dep. at 103, ECF No. 97-1, PageID.418).  The defendants do not challenge plaintiff's assertion that Mr. Butterworth initiated this altercation.  Plaintiff has offered no evidence, however, that the deputies knew, at the time they entered the cell, that Mr. Butterworth had been the aggressor.  Plaintiff testified that he had yelled for help, but the deputies arrived some five minutes after Mr. Butterworth began the alteration.  (*Id.* at 98-99, 102, PageID.417-18).  While plaintiff asserts that nearby jail staff observed the assault (*id.* at 102, PageID.418), he offers nothing to suggest that their observations had been communicated to deputies Joliffe and Reynhout.

According to plaintiff's account, upon arrival at the cell, the deputies gave him inconsistent, if not conflicting, directions.  (*See* Pltf's Dep. at 109, PageID.419 (one telling him to "get on the ground," and the other "don't move")).  Plaintiff was confused, so he simply put his hands up and "froze" in position.  (*Id.*).  It was at this point, that Deputy Jolliffe grabbed plaintiff by the neck and took him to the floor. The deputy continued the choke hold despite plaintiff's complaint that the deputy was hurting him and that he was having difficulty breathing.  The deputy responded by telling plaintiff to "stop moving."  Plaintiff's deposition account of the incident does not include any statement by Deputy Joliffe indicating indifference to plaintiff's pain or difficulty breathing, as was alleged in the amended complaint.

Plaintiff testified that Deputy Reynhout grabbed and bent his legs while plaintiff was face down with his stomach or abdomen on the floor.  Plaintiff described it as a "wrestler move with a choke hold." (Pltf's Dep. at 113, PageID.420).  Unlike his amended complaint, plaintiff's deposition account of the incident does not include any assertion that the deputies knelt on his spine.

Plaintiff testified that, after being handcuffed, he was on the floor for approximately one minute before the deputies lifted him up.  Deputy Joliffe then offered plaintiff another food tray, an offer plaintiff accepted. (Pltf's Dep. at 114-15, PageID.420).

Defendants contend that their actions did not violate plaintiff's Fourteenth Amendment rights, as their actions were a reasonable immediate response to an altercation that was taking place between two inmates.  (Defs' Br. at 8, ECF No. 97, PageID.401).  Defendants note that plaintiff has failed to offer any evidence that Deputies Joliffe and Reynhout should have known that plaintiff had not been the aggressor and that plaintiff posed no threat to them.  (*Id.* at 8-9, PageID.401-02).

Unlike the Eighth Amendment, under the Fourteenth Amendment, plaintiff need show "only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. at 2472-73.[9]  The Supreme Court has explained that this standard is not to be applied mechanically,

---

[9] Under the Eighth Amendment, "a 'prisoner must establish both an objective and subjective component' to make out an excessive force claim[.]" *Hopper v. Plummer*, 887 F.3d 744, 752 (6th Cir. 2018) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).

but rather, with regard to the specific facts and circumstances of each case:

> A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of jail officials "are needed to preserve internal order and discipline and to maintain institutional security."

*Id.* at 2473 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989) and *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)). This standard "adequately protects an officer who acts in good faith." *Kingsley v. Hendrickson*, 135 S. Ct. at 2474.

"Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of the government." *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Prison officials facing altercations between inmates "are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving[.]" *Graham v. Connor*, 490 U.S. at 397). Accordingly, they enjoy substantial discretion in addressing these situations. *See Kingsley v. Hendrickson*, 135 S. Ct. at 2474 (citing *Florence v. Board of Chosen Freeholders of Cty. Burlington*, 566 U.S. 318, 326 (2012)).

In assessing the objective reasonableness of the force applied in any given case, the court should consider:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kinglsey v. Hendrickson*, 135 S. Ct. at 2473 (citing *Graham v. Connor*, 490 U.S. at 396).  While this list is not exhaustive, these factors "illustrate the types of objective circumstances potentially relevant to a determination of excessive force."  *Id.*

Applying these factors to plaintiff's own account of the incident in question, it is evident that plaintiff has failed to establish that Deputies Jolliffe and Reynhout employed purposeful force that was objectively unreasonable.  The deputies were responding to an altercation between two inmates.  It is not objectively unreasonable for a guard to respond aggressively, and even violently, to subdue inmates who are actively engaged in a fight.  *See Alexander v. Ojala*, No. 2:16-cv-85, 2017 WL 4697523, at *3-4 (W.D. Mich. Aug. 30, 2017); *Molina v. Smearsal*, No. 3:08-cv-2912, 2011 WL 127158, at *5-6 (N.D. Ohio Jan. 14, 2011).  There is no evidence that the deputies knew who had been the aggressor.  When they entered the cell, plaintiff and Mr. Butterworth were still engaged in a physical altercation.  The deputies cannot be expected to conduct an interview of those involved in an altercation before taking action to end it.

The deputies may have undermined their own efforts to put a quick end to the altercation by giving plaintiff conflicting directives – to get on the ground and not to move[10] – but their respective orders were not objectively unreasonable.[11]  Crediting

---

[10] At one point in his deposition, plaintiff stated that one of the deputies told him to "get on the ground," while the other ordered him to both "don't move" and to "get on the ground."  (Pltf's Dep. at 109, ECF No. 97-1, PageID.419).

[11] Defendants are not liable for any negligent conduct.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

plaintiff's account, he "froze" in the face of the conflicting orders and remained standing with his hands up.  (*See* Pltf's Dep. at 109, ECF No. 97-1, PageID.419). Having failed to comply with his order to get on the ground, Deputy Jolliffe forced plaintiff to the floor using a choke hold.  Deputy Reynhout employed a "wrestler move" to secure plaintiff's legs.  While the choke hold interfered to some extent with plaintiff's ability to breathe, it did not prevent him from verbally engaging the deputy throughout the take-down (*see id.* at 109-110, PageID.419); nor did plaintiff completely lose consciousness (*see id.* at 110 ("I believe I blacked out somewhat.  I was going black, whatever you want to call it.").  Once secured, plaintiff was quickly brought to his feet, and the force used to secure him ceased.  (*See id.* at 114, PageID.420 ("I was on the floor for a minute.  Then I got lifted up, raised up – they wanted me to raise up on my own, but I couldn't.")).

I have considered plaintiff's allegation that he experienced "excruciating" pain during the take-down (Pltf's Dep. at 114, PageID.420) in light of the Sixth Circuit's counsel that the "unreasonable infliction of 'intense physical pain' is sufficient to give rise to an excessive-force claim." *Evans v. Plummer*, 687 F. App'x 434, 441 (6th Cir. 2017) (citing *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1048 (6th Cir. 1996)). But plaintiff's own account falls short of establishing that the deputies engaged in wanton efforts to inflict pain, or that the force causing the pain was extended beyond what was reasonably necessary to achieve its goal.  In *Holmes v. City of Massillon, Ohio*, for example, the plaintiff testified that a booking officer ignored suggestions to use soap and water to remove a wedding ring from her swollen finger, opting instead

to grab her wrist and to continuously wrench her ring finger for a period of some five minutes. Plaintiff further testified that she was in "extreme pain" and she repeatedly pleaded with the officer to stop. *See* 78 F.3d at 1043-44, 1048.

Here, plaintiff concedes that he was on the floor a short period of time, and by his own account, the pain resulted from the deputies efforts to subdue him and to end an altercation between inmates. There is insufficient evidence for a reasonable fact finder to conclude that the deputies acted with the purpose of causing plaintiff intense physical pain.

Even assuming, however, that there are questions of fact concerning whether the deputies' combined use of a choke hold and a "wrestler move" was objectively reasonable, defendants are entitled to qualified immunity on the basis on the second prong on the immunity analysis. The Court has reminded plaintiff repeatedly that he bears the burden of showing that, at the time of the incident in question, the courts had clearly established that the actions the deputies employed violated provisions of the Constitution. Plaintiff has failed to offer any legal authority to support his contention that the deputies' tactics were illegal; much less has he met his burden of demonstrating that, as of August 13, 2013, the illegality of these tactics had been clearly established. To the contrary, plaintiff conceded in his deposition that his contention that the deputies engaged in an illegal choke hold is based on a martial arts YouTube video he once watched. (Pltf's Dep. at 111-12, PageID.419).

-25-

## B.      Deliberative Indifference

Plaintiff claims that Deputies Jolliffe and Reynhout's actions caused him serious injuries, including "spinal injuries, nerve damage, and emotional distress." (Amended Complaint ¶ 22, ECF No. 24, PageID.98).  Plaintiff further claims that, despite his "cries of pain," both deputies were deliberately indifferent to his medical needs.  (*Id.* ¶¶ 26, 31, PageID.98-99).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.  *Estelle*, 429 U.S. at 104-05.  In judging the sufficiency of "deliberate indifference" claims, the Court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention.  *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard:  a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). [12]  501 U.S. at 298.  "The

---

[12] "Pre-trial detainees have a right under the Fourteenth Amendment to adequate medical treatment, a right that is analogous to the right of prisoners under the Eighth Amendment." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005).

-26-

plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).

"The objective component requires the existence of a 'sufficiently serious' medical need." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Broughton v. Premier Health Care Servs.*, 656 F. Appx 54, 56 (6th Cir. 2016). "The subjective component requires an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.' " *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). The prisoner must show that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. at 837.

---

Plaintiff's deliberate indifference claim is analyzed under the Eighth Amendment standards whether he was a pretrial detainee or serving a custodial sentence at the time of the alleged incident. *See Hopper v. Plummer*, 887 F.3d at 756 ("We analyze a Fourteenth Amendment claim for deliberate indifference to a serious medical need under the same rubric as Eighth Amendment claims brought by prisoners."); *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) ("The Eighth Amendment protection against deliberate indifference extends to pretrial detainees in state prisons by operation of the Due Process Clause of the Fourteenth Amendment." (citing *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Sixth Circuit has not yet considered whether the *Kingsley v. Hendrickson* decision abrogates the subjective component of a Fourteenth Amendment deliberate indifference claim, and it has recently noted that it has been unable to find any circuit court opinion applying the Supreme Court's decision "specifically to a deliberate indifference to a detainee's serious medical needs claim." *Richmond v. Huq*, 885 F.3d 928, 938 n.3 (6th Cir. 2018).

The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted).

Plaintiff's own account of the August 13, 2013, incident belies his deliberate indifference claim. No reasonable trier of fact could find in plaintiff's favor on either component of Eighth Amendment claims against defendants Jolliffe and Reynhout.

Plaintiff concedes that, in the immediate aftermath of the assault, his injuries were such that he believed he could treat them himself, and that the injuries only worsened after he was released from the jail later that day. (Pltf's Dep. at 121-22, ECF No. 97-1, PageID.422). This concession is a mortal blow to his deliberate indifference claim. An official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer v. Brennan*, 511 U.S. at 837. If plaintiff was unaware of his own need for professional medical treatment – keeping in mind that he was experiencing only the subjective symptom of pain – it can hardly be said that the deputies knew of and disregarded an excessive risk to plaintiff's health.

In fairness to plaintiff, he testified that he was in "shock" in the immediate aftermath of the take-down, and accordingly, "didn't have any feeling." (Pltf's Dep. at 121, PageID.422). The relevant inquiry, however, is whether the circumstances were such that it was evident to the deputies that plaintiff needed medical care, and whether the failure to provide that care was tantamount to criminal recklessness. *See Farmer v. Brennan*, 511 U.S. at 837. There is nothing in the record to suggest that the deputies should have known that plaintiff needed medical care while still in the custody of the Kalamazoo County Jail. Plaintiff, himself, did not perceive the need for medical care until some period of time after he left the jail, opting instead to treat himself with "old pain killers." (Pltf's Dep. at 122, PageID.422).[13]

## II.    Plaintiff's Motions for Summary Judgment and for Judgment on the Pleadings

On May 23, 2018, plaintiff filed a document containing a number of motions, including a motion for summary judgment. (ECF No. 143, PageID.686). His motion simply states that the Court should enter judgment in his favor "[due] to FACTS already submitted to this U.S. Fed. Court." (*Id.*).

On June 18, 2018, plaintiff filed a document containing a number of motions, including one in which he asks the Court "to enter a final judgment when it comes to

---

[13] The only medical evidence plaintiff has submitted are physical therapy notes from January 2014 and October 2016. (*See* "Supplement Evidence," ECF No. 60, PageID.225-31). The notes reflect plaintiff's report that he has been experiencing neck and back pain since "getting attacked while he was in jail on 8/13/13." (*Id.*, PageID.226). Plaintiff testified that he "finally got a primary doctor" approximately a year before the date of his deposition in this case, which took place August 4, 2017. (Pltf's Dep. at 4, 124, ECF No. 97-1, PageID.409, 422).

-29-

Case 1-16-CV-00883 [due] to the facts."  (ECF No. 159, PageID.780).  He makes a number of assertions of fact, only one of which relates to the claims in his complaint: that is, that defendants "admit the wrong doing on incident report 13-7207 taken 8/13/2013."[14]  (*Id.*).

Neither of these motions requires much analysis.  Putting aside plaintiff's failure to follow the Court's rules regarding the filing of motions, *see* W.D. MICH. LCIVR 7.1(a), (b), (d), he offers nothing to meet any of the requirements of Federal Rules of Civil Procedure 12(c) or 56.  Moreover, and for the reasons stated above, defendants, not plaintiff, are entitled to summary judgment.

## III.    Plaintiff's Motions to Amend Complaint and Join Defendants

On February 28, 2018, plaintiff filed a document containing a number of motions, one of which was his third effort to amend his complaint, in which he seeks to add the State of Michigan as a defendant.  (ECF No. 113, PageID.487-488).  In support of this motion, plaintiff alleges that "[t]he State of Michigan is a Money Capital of the UNITED STATES OF AMERICA [so] 'there will not be a problem producing, fines and cost[s] etc."  (*Id.*, PageID.488).  He appears to allege that the State of Michigan should be made a party to this lawsuit because it can take disciplinary action against Kalamazoo County, and he seeks to "re-add" Kalamazoo County as a defendant.  In a related motion, plaintiff asks the Court to hold the State of Michigan and Kalamazoo County liable for failure to train.  (ECF No. 138).

---

[14] As noted above, defendants in no way admit wrongdoing.  To the contrary, their statements would support a finding that they acted reasonably.  (*See* footnote 3, *supra*).

On July 26, 2018, plaintiff filed his fourth motion to amend his complaint, seeking to add some forty additional defendants, including the undersigned judicial officer.  (ECF No. 166).  Plaintiff simply asserts conclusory claims against each of the proposed defendants without the support of any factual allegations.  (*See id.*).

"[L]eave to amend a complaint may be denied where there is undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party for virtue of allowance of the amendment, *futility of amendment*, etc."  *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (citation and quotations omitted).   " 'A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.' "  *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018) (quoting *Beydoun*, 871 F.3d at 469).  Plaintiff's motion to amend should be denied as futile.

A complaint that merely names a defendant without alleging specific conduct by that defendant is subject to summary dismissal.  *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1994); *Flores v. Prison Health Services*, No. 1:18-cv-450, 2018 WL 3326858, at *3 (W.D. Mich. July 6, 2018) ("Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints."); *Jakubowski v. Michigan Dep't of Corr.*, No. 1:18-cv-391, 2018 WL 1959494, at *3 (W.D. Mich. Apr. 26, 2018) (collecting cases).  Here, plaintiff fails to include factual allegations that would support the claims he seeks against each defendant named in his third and fourth attempts to amend the complaint.

-31-

To the extent plaintiff seeks to reinstate Kalamazoo County as a defendant, it is simply another attempt to convince this Court to reconsider its orders of September 26 and October 3 (ECF No. 74, 79), granting the county's motion to dismiss.  The Court denied plaintiff's previous motion for reconsideration of the dismissal of Kalamazoo County (ECF No. 82), noting that it "raised no new issues not already considered by this Court, and having failed to convince the Court that its prior ruling was erroneous." (ECF No. 85, PageID.346).  Plaintiff again offers nothing to suggest that the Court's decisions to dismiss the county and to deny his previous motion for reconsideration were erroneous.

Accordingly, I recommend that the Court deny as futile plaintiff's motions to amend and to join defendants.  (ECF No. 113, 138, 166).

## Recommended Disposition

For the reasons set forth herein, I recommend that defendants Jolliffe and Reynhout's motion for summary judgment (ECF No. 96) be granted.  I recommend that plaintiff's motions to further amend the complaint (ECF No. 113, 138, and 166) be denied as futile.  I recommend that plaintiff's motions for summary judgment (ECF No. 143) and his motion for judgment on the pleadings (ECF No. 159) be denied. Finally, I recommend that judgment be entered in favor of defendants Jolliffe and Reynhout, and that the case be dismissed.

Dated:   September 5, 2018              /s/  Phillip J. Green
                                        PHILLIP J. GREEN
                                        United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).